IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


LOUIS PENNELL, JR., and       §                               **PLAINTIFF**
PAMELA PENNELL              §
                                    §
                                    §
**v.**                               § Civil No. 1:10-cv-00582-HSO-JMR
                                    §
                                    §
**WELLS FARGO BANK, N.A.,**      §
**WELLS FARGO HOME MORTGAGE,**   §
**MORRIS & ASSOCIATES,**        §
**and JOHN AND JANE DOES 1-10**   §                          **DEFENDANTS**


### MEMORANDUM OPINION AND ORDER GRANTING MOTION OF DEFENDANTS WELLS FARGO BANK, N.A., AND WELLS FARGO HOME MORTGAGE FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion of Defendants Wells Fargo Bank, N.A. ("Wells Fargo Bank"), and Wells Fargo Home Mortgage ("WFHM"), for Summary Judgment [63] pursuant to Fed. R. Civ. P. 56. Plaintiffs have filed a Response [66], and Defendants a Reply [68]. After consideration of the parties' submissions, the record, the relevant legal authorities, and for the reasons discussed below, the Court finds that the Motion should be granted.

## I.  BACKGROUND

A.   Procedural History

On December 22, 2010, Plaintiffs, Louis Pennell, Jr., and Pamela Pennell, filed their Complaint [1] against Wells Fargo Bank, WFHM, and Morris & Associates, alleging that Defendants wrongfully foreclosed on their home. Plaintiffs also asserted

claims for slander of title and private nuisance against all Defendants, intentional and negligent misrepresentation against Wells Fargo Bank, and violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA), against WFHM and Morris & Associates. On February 8, 2011, Plaintiffs filed a First Amended Complaint [13], inserting additional facts but advancing the same claims made in their original Complaint [1].

On May 5, 2011, the Court granted the Motion to Dismiss [19] of Wells Fargo Bank and WFHM and dismissed Plaintiffs' FDCPA claim against WFHM. Order [26] at p. 5. On June 26, 2012, the Court dismissed Morris & Associates by Agreed Order [69], due to settlement. Wells Fargo Bank and WFHM ("Defendants") filed the present Motion for Summary Judgment [63] on March 15, 2012, seeking dismissal of all remaining claims against them.

B.     Factual Allegations

Plaintiffs built a home in Ocean Springs, Mississippi (the "Property"), in the year 2000, with a loan of $200,000.00 from First Federal Bank. Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at pp. 29-32. On June 25, 2007, Plaintiffs refinanced the Property, and executed a promissory note (the "Note") in favor of Wells Fargo Bank in the amount of $375,500.00. Note, Ex. 3 to Ex. A. to Defs.' Mot. for Summ. J. [63] at pp. 38-40. The Note was secured by a Deed of Trust, pledging the Property as security for the loan. Deed of Trust, Ex. 4 to Ex. A. to Defs.' Mot. for Summ. J. [63]. Wells Fargo Bank was the sole holder of Plaintiffs' Note from the date of execution until the foreclosure. Defs.' Resp. to Pls.' Interrog., Ex. 1 to Pls.'

Resp. [67] to Defs.' Mot. for Summ. J. [63] at p. 2. Wells Fargo Bank held the Note in favor of investor Federal National Mortgage Association ("Fannie Mae"). *Id.* Via a servicing agreement, WFHM acted as the servicer of Plaintiffs' Note, and collected payments from Plaintiffs at the direction of Wells Fargo Bank. *Id.* at 2-3.

Pursuant to the Note and Deed of Trust, Plaintiffs agreed to repay the loan in monthly installments of $2,777.14. Note, Ex. 3 to Ex. A to Defs.' Mot. for Summ. J. [63]; Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at p. 52. The Note provided that Plaintiffs would be considered in default if full monthly payments were not made on the date that they were due. Note, Ex. 3 to Ex. A to Defs.' Mot. for Summ. J. [63]. It authorized Wells Fargo Bank to accelerate the loan balance in the event of default. *Id.* The Deed of Trust required Wells Fargo Bank to provide Plaintiffs notice prior to acceleration, advise them of an opportunity to cure, and warn them that failure to cure may result in foreclosure. Deed of Trust, Ex. 4 to Ex. A. to Defs.' Mot. for Summ. J. [63]. The Deed of Trust also required Wells Fargo Bank to notify Plaintiffs in writing if it elected to sell the Property. *Id.*

Plaintiffs began experiencing financial difficulty, and fell behind on their mortgage payments. Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at p. 50; Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at p. 25. Between January 14, 2008, and December 6, 2009, WFHM sent twelve letters to Plaintiffs, warning them of impending acceleration of their mortgage balance if the amount in arrears was not cured, and further advising them that foreclosure could be initiated after acceleration. Letters, Ex. 6 to Ex. A to Defs.' Mot. for Summ. J. [63].

Mrs. Pennell acknowledges receiving these letters. Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at p. 23.

In late 2008 or in early 2009, Plaintiffs contacted Wells Fargo Bank about a loan modification. Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at p. 50; Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at pp. 31-32. Wells Fargo responded by letter dated September 3, 2009, offering a Trial Period Plan. Letter, Ex. 7 to Ex. A. to Defs.' Mot. for Summ. J. [63]. According to the letter:

> You may qualify for a new workout option - a way to make your payment more affordable.
>
> We have enclosed a customized Trial Period Plan. If you qualify under the program requirements and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure.
>
> Step One: Provide the information we need to help you.
> . . .
>
> If you do not qualify for a loan modification, we will work with you to explore other options available to help you keep your home or ease your transition to a new home.
> . . .
> 1.      . . . The indebtedness of the referenced loan is in default and in consideration of extending forbearance for a period of time, it is necessary that you indicate your understanding and acceptance of the terms of the workout option by immediately signing and returning this Agreement.
>
> 2.      This Agreement temporarily accepts reduced installments or maintains regular monthly payments as outlined in Section 5 below. . . . Any outstanding payments and fees will be reviewed for a loan modification. If approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement. . . .
>
> 3.      The lender is under no obligation to enter into any

further agreement, and this Agreement shall not constitute a waiver of the lender's right to insist upon strict performance in the future.

4.      All of the provisions of the Note and Security Instrument, except as herein provided, shall remain in full force and effect.  A breach of any provision of or non-compliance with this Agreement shall render the Agreement null and void.  The lender, in its sole discretion and without further notice to you, may terminate this Agreement.  If the Agreement is terminated, the lender may institute foreclosure proceedings according to the terms of the Note and Security Instrument. . . .

Letter, Ex. 7 to Ex. A. to Defs.' Mot. for Summ. J. [63].  Plaintiffs signed the Trial Period Plan Agreement on September 12, 2009.  *Id.*  Pursuant to the Plan, Plaintiffs paid $2,498.87 per month for the months of October, November, and December 2009. *Id.*; Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at p. 55.  It is undisputed that Plaintiffs made no further payments after December 2009.  *Id.* at pp. 59-60.

Wells Fargo Bank began foreclosure proceedings in January 2010.  Letter, Ex. 11 to Ex. A. to Defs.' Mot. for Summ. J. [63].  Mr. Pennell testified that he "may" have received a letter informing Plaintiffs that the foreclosure process was starting.  Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. at p. 72.  Mrs. Pennell testified that she did not know that foreclosure proceedings had commenced.  Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at p. 34.  The attorneys hired to foreclose on the Property, Morris & Associates, submitted a letter in support of their Motion for Summary Judgment [52].  Letter, Ex. C to Morris & Associates' Mot. for

Summ. J. [52]. This letter, dated February 9, 2010, and addressed to Plaintiffs, states that Plaintiffs owe $403,694.69, and informs them that "[w]e have been engaged by [Wells Fargo Bank] to institute foreclosure to enforce the security interest ("Deed of Trust") pertaining to the above-referenced account. . . . [W]e intend to initiate foreclosure before the expiration of the 30-day period." *Id.*

A substitute trustee advertised the Property for sale on March 18, 2010, by posting a notice in the County Courthouse of Jackson County, Mississippi, and by publishing a notice for three consecutive weeks in The Mississippi Press, a local newspaper. Substitute Trustee's Deed, Ex. 9 to Ex. A to Defs.' Mot. for Summ. J. [63]. On June 3, 2010, the Property was sold to the highest bidder, Wells Fargo Bank, for $409,719.09. *Id.*

After Wells Fargo Bank had instituted foreclosure proceedings, Plaintiffs continued to receive requests for information from Defendants regarding loan modification. Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at p. 72; Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at p. 38. Plaintiffs continued providing Defendants information. *Id.* Mr. Pennell testified that, after Plaintiffs made the three Trial Period Plan payments, they were told by a representative of Defendants that they qualified for loan modification. Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at p. 57. Mrs. Pennell testified that Shannon Garcia, a representative of Defendants who was handling Plaintiffs' file, told her in January 2010 that the modification process would "go a lot quicker" if Plaintiffs did not make payments, and "it will be finished and your note will be, you

know, lower." Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at p. 33.

According to Mr. Pennell, "we were told not to make payments because that would –

we were told that would confuse things and make it harder to push it through." Dep.

of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at p. 60.  Plaintiffs contend

that Defendants' representatives told them not to worry about the default letters they

received, because they were "in a loan modification" or "working on a loan

modification," and "everything was good" and "those letters go out automatically, but

they don't really mean anything."  Dep. of Louis Pennell, Ex. A to Defs.' Mot. for

Summ. J. [63] at pp. 62, 71-72; Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for

Summ. J. [63] at p. 33.  Mrs. Pennell testified that she received a letter from Wells

Fargo Bank dated May 27, 2010, less than a week before the Property was sold at

foreclosure, requesting more information related to obtaining a permanent loan

modification.  Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at pp. 40,

52.  This letter states:

> We're writing to follow-up on your request for mortgage
> payment relief under the government's *Home Affordable
> Modification Program*, and to thank you for sending us the
> documentation requested.  Due to certain program
> requirements, there's additional information we must receive
> from you before we can determine your eligibility for this
> program.
> . . .
> As of the date of this letter, we still need the documents that
> are listed below.  We want to help you, but we must receive
> these documents from you before we can move forward with
> the mortgage payment relief available under the *Home
> Affordable Modification Program.*
> . . .
> Complete, signed and dated copy of the most recent filed
> federal tax return including all schedules.

> . . .
> If you do not send us the documents, we cannot help you and your Trial Period Plan will end and the normal servicing/collection process will continue uninterrupted. The government guidelines only allow you one opportunity for relief under the *Home Affordable Modification Program*. That's why we strongly encourage you to send us the requested documents by Saturday, June 26, 2010. . . .

Letter, Ex. F to Defs.' Mot. for Summ. J. [63]. Mrs. Pennell testified that she faxed the requested tax return to Defendants as soon as she received this letter. Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at p. 38. She then called Shannon Garcia, who confirmed that she had received the tax return, and who allegedly told Mrs. Pennell, "we're good to go" and "we would be closing up this next week, we would be finishing everything." *Id.* at 38-41. Mrs. Pennell testified that she "was under the impression that we would be finished and the loan would be redone. We would have a new loan." *Id.* at 38.

The Property was foreclosed upon on June 3, 2010. Substitute Trustee's Deed, Ex. 9 to Ex. A. to Defs.' Mot. for Summ. J. [63]. Plaintiffs claim that they did not know that their home had been foreclosed upon until after the fact, when realtors placed a sign in their yard, and gave them a letter from Morris & Associates stating that the Property had been sold at foreclosure. Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at p. 69; Dep. of Pamela Pennell, Ex. B. to Defs.' Mot. for Summ. J. [63] at pp. 28, 53.

Mr. Pennell asserted that, when Plaintiffs learned about the foreclosure, they contacted Defendants and asked why the foreclosure occurred when Plaintiffs "were

in the process of doing a loan modification."  Dep. of Louis Pennell, Ex. A to Defs.'
Mot. for Summ. J. [63] at p. 68.  According to Mr. Pennell, more than one
representative of Defendants told Plaintiffs that the foreclosure was "a mistake" and
"should not have happened."  *Id.* at pp. 73-74, 103.

Plaintiffs requested that Defendants rescind the foreclosure sale on June 4,
2010, the day after the Property was sold.  *Id.* at p. 75; Dep. of Pamela Pennell, Ex. B
to Defs.' Mot. for Summ. J. [63] at p. 34.  Wells Fargo Bank sent Plaintiffs a letter
dated June 14, 2010, informing them that "the total amount to reinstate the mortgage
is $30,242.15."  Letter, Ex. 8 to Ex. A to Defs.' Mot. for Summ. J. [63].  The letter
directed Plaintiffs to contact Wells Fargo Bank prior to remitting the funds in order to
determine whether additional amounts had become due on their account.  *Id.*
According to Mrs. Pennell, Defendants "gave us two weeks or maybe 10 days, they
said, to come up with the money."  Dep. of Pam Pennell, Ex. B to Defs.' Mot. for
Summ. J. [63] at p. 35.

Mr. Pennell testified that Plaintiffs were prepared to make the $30,242.15
payment, and took the money out of his 401(k) retirement plan to do so.  Dep. of Louis
Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at pp. 78, 84.  He claimed that, over
several days, Plaintiffs called and spoke to several representatives of Defendants to
find out where to make the payment.  *Id.* at p. 102.  Mrs. Pennell testified that a
representative of Defendants directed her to take the money to Morris & Associates.
Dep. of Pam Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at p. 36.  Mrs. Pennell
asserts that she called Morris & Associates and was told that Morris & Associates

would not accept the money. *Id.* at pp. 36, 55-56. She then called Defendants, and was informed that Wells Fargo Bank had not determined yet whether it would permit Plaintiffs to make a payoff in order to rescind the foreclosure. *Id.* Mr. Pennell maintained that he called Defendants and was advised that Wells Fargo Bank had decided not to accept a payoff to rescind the foreclosure. Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at pp. 78, 102.

WFHM sent Plaintiffs a letter dated August 2, 2010, formally denying their request to rescind the foreclosure. Letter, Ex. 11 to Ex. A to Defs.' Mot. for Summ. J. [63]. The letter relates that foreclosure proceedings were initiated on January 26, 2010, and were not halted or suspended because a viable plan or modification had not been approved. *Id.* Because no viable plan was established before the foreclosure sale, WFHM concluded that the foreclosure was valid. *Id.* Mr. Pennell acknowledged in his deposition that he "does not remember" entering into a permanent loan modification with Defendants. Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at pp. 63-64, 77.

## II. DISCUSSION

### A.  Defendants' Motion for Summary Judgment

#### 1.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported

claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to

articulate precisely how this evidence supports his claim." *Id.*

The Court's jurisdiction in this case is premised upon diversity jurisdiction pursuant to 28 U.S.C. section 1332. In a diversity action, a federal court applies state substantive law. *Krieser v. Hobbs,* 166 F.3d 736, 739 (5th Cir. 1999). The parties agree that Mississippi substantive law governs this diversity case.

2.      Wrongful Foreclosure Claim

Plaintiffs allege that Defendants wrongfully foreclosed by not giving them notice of the foreclosure, thereby denying them the opportunity to reinstate their loan prior to foreclosure. Pls.' Resp. [67] to Defs.' Mot. for Summ. J. [63] at pp. 1, 5, 15. They also contend that Defendants wrongfully foreclosed because they failed to follow Fannie Mae's servicing guidelines. *Id.* at 2-3, 7-15.

Under Mississippi law, a wrongful foreclosure occurs when a foreclosure is attempted solely for a malicious desire to injure the mortgagor, or the foreclosure is conducted negligently or in bad faith to the mortgagor's detriment. *National Mortgage Co. v. Williams,* 357 So. 2d 934, 935-36 (Miss. 1978).

i.      Notice of Foreclosure

Mississippi is a non-judicial foreclosure state. As such, Mississippi law does not require the mortgagee to directly notify the mortgagor of an impending foreclosure. *EB, Inc. v. Allen,* 722 So. 2d 555, 561 (Miss. 1998); *Admin. of May v. First Fed. Bank for Sav.,* 32 So. 3d 1227, 1229 (Miss. Ct. App. 2010); *see* JEFFREY JACKSON & MARY MILLER, 6 ENCYC. MISS. LAW § 51:12. The Mississippi Code requires only that a notice be posted in the courthouse of the county where the land is

situated, and that a notice of sale be published in a paper of general circulation. MISS. CODE ANN. § 89-1-55. There can be no dispute, and Plaintiffs have not contested, that Wells Fargo properly followed the posting and publishing requirements of this statute.

Any additional notice requirements beyond those expressed in section 89-1-55 are determined by the provisions of the particular note and deed of trust. *EB, Inc.,* 722 So. 2d at 561. The Deed of Trust here required Wells Fargo Bank to notify Plaintiffs of default, impending acceleration, and an opportunity to cure:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale . . . .

Deed of Trust, Ex. 4 to Ex. A to Defs.' Mot. for Summ. J. [63]. Based on a review of the record, there can be no dispute that Defendants complied with this provision of the Deed of Trust, as evidenced by the twelve letters WFHM sent to Plaintiffs

between January 14, 2008, and December 6, 2009.  Letters, Ex. 6 to Ex. A to Defs.'

Mot. for Summ. J. [63].

The Deed of Trust further provides:

> If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 15, notice of Lender's election to sell the Property. . . .

Deed of Trust, Ex. 4 to Ex. A. to Defs.' Mot. for Summ. J. [63].  Section 15 of the Deed of

Trust states:

> 15.  Notices.  All notices given by Borrower or Lender in connection with this Security Interest must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.

*Id.*  Defendants did not submit evidence in support of their Motion for Summary

Judgment [63] establishing that they complied with this provision of the Deed of

Trust, which required them to notify Plaintiffs of foreclosure in writing by first class

mail.  Former co-defendant, Morris & Associates, however, did produce a letter as

Exhibit "C" in support of its Motion for Summary Judgment [52], which was

addressed to Plaintiffs, and which states: "We have been engaged by Wells Fargo

Bank, NA to institute a foreclosure to enforce the security interest ("Deed of Trust")

pertaining to the above referenced account."  Letter, Ex. C to Morris & Associates'

Mot. Summ. J. [52].  This letter is dated February 9, 2010, nearly four months prior

to the sale of the Property.  *Id.*

Pursuant to Federal Rule of Civil Procedure 56(c)(3), the Court has the authority to consider this letter.  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3); *see Vann v. Gilbert,* No. 11-11102, slip op., 2012 WL 1994725, *3 (5th Cir. 2012).   The Court finds that this letter constitutes competent summary judgment evidence pursuant to Federal Rule of Civil Procedure 56(c)(1)(A), and establishes that Defendants did provide the  extra-statutory notice to Plaintiffs sufficient to satisfy the requirements of the Deed of Trust.  There can be no material dispute of fact that Defendants supplied Plaintiffs with proper notice of foreclosure.

ii.    Fannie Mae Servicing Guidelines

Plaintiffs contend that the foreclosure was also wrongful because Defendants were required to follow Fannie Mae's servicing guidelines[1] and offer specific types of relief to Plaintiffs before foreclosing on the Property, yet failed to do so.  Pls.' Resp. [67] to Defs.' Mot. for Summ. J. [63] at pp. 2-3, 7-15.  According to Plaintiffs, Fannie Mae's servicing guidelines precluded foreclosure on the Property.  *Id.* at 3.  This claim was raised for the first time in Plaintiffs' Response [67].  *Id.* at pp. 2-3, 7-15.  It was not pled in the Complaint [1] or Amended Complaint [13].  "A claim which is not

_____

[1]Plaintiffs rely on a document entitled, "Fannie Mae 2010 Servicing Guide Update Part VII and Part VIII" which they retrieved from Fannie Mae's website.  Pls.' Resp. to Defs.' Mot. for Summ. J. at p. 7.  They ask the Court to take judicial notice that this document contains Fannie Mae's servicing guidelines.  *Id.*  Defendants do not admit that the document contains Fannie Mae's servicing guidelines, and object to the document as unauthenticated.  Defs.' Reply [68] at p. 3.  The Court need not reach the issue of whether the document actually contains Fannie Mae's servicing guidelines.

raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.,* 429 F.3d 108, 113 (5th Cir. 2005)(citing *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir. 1980)). For this reason, this argument is insufficient to withstand summary judgment. Nonetheless, even if it had been properly pled, this claim could not survive summary judgment on its merits.

Federal courts have uniformly held that borrowers are not third-party beneficiaries of mortgage servicing guidelines. In *Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 357 (5th Cir. 1977), a borrower with HUD-assisted mortgage payments challenged a non-judicial foreclosure, on the basis that certain guidelines set forth in the HUD Handbook had not been followed. The Fifth Circuit held that the HUD handbook was not designed for the benefit of the borrowers, but for HUD-approved entities to service HUD-insured home mortgages. *Id.* at 360. The Fifth Circuit concluded that the plaintiff was merely an "incidental beneficiary" of the HUD handbook, and not one who was intended to enforce the provisions of the handbook. *Id.* at 362. "[T]he mortgagee . . . would have to intend that the mortgagor have an enforceable right" in order to create an intended third-party beneficiary. *Id.* The Court found that the Handbook was nothing more than "a compilation of procedural information and policy guidelines for mortgagees." *Id.*

In *Hinton v. Federal National Mortgage Association,* 945 F. Supp. 1052, 1057 (S.D. Tex. 1996), a federal district court found that Fannie Mae's servicing guide "is a set of instructions from a lender-principal to a servicer-agent; it is not a contract

between borrower and lender." Assuming the guide was a contract, only Fannie Mae

could question the servicer-agent's adherence to it. *Id.* at 1057-58. The borrower was

not a third-party beneficiary. *Id.* Similarly, a district court in *Cade v. BAC Home*

*Loans Servicing, LP,* No. H-10-4224, 2011 WL 2470733, *2-4 (S.D. Tex. 2011), has

rejected the theory that borrowers are intended third-party beneficiaries of HAMP

servicing participation agreements, instead finding that the borrower is an incidental

beneficiary, without standing to enforce the agreements. *See also Warren v. Bank of*

*America,* No. 4:11-cv-70, 2011 WL 2116407, *3 (S.D. Ga. 2011)("Every court that has

examined whether Congress intended to endow mortgagors with third party

beneficiary rights to enforce HAMP has held it did not.")(collecting cases); *Thomas v.*

*JPMorgan Chase & Co.,* 811 F. Supp. 2d 781, 797-98 (S.D.N.Y. 2011)("plaintiffs were

neither parties to the [servicing agreement between mortgagee and Fannie Mae] nor

intended third-party beneficiaries"); *Wells Fargo Bank, N.A. v. Sinnott,* No. 2:07 CV

169, 2009 WL 3157380, *10-11 (D. Vt. 2009)("[B]orrowers . . . are not third-party

beneficiaries to the Servicer Guide between Freddie Mac and lenders."); *Deerman v.*

*Fed. Home Loan Mortg. Corp.,* 955 F. Supp. 1393, 1404-05 (N.D. Ala. 1997), aff'd, 140

F.3d 1043 (11th Cir. 1998)("borrowers are not third-party beneficiaries of a mortgage

servicing contract").

Mississippi law requires that the right of a third party to maintain an action as

a third-party beneficiary must "spring from the contract terms." *Trammell v. State,*

622 So. 2d 1257, 1260 (Miss. 1993). Plaintiffs have proffered no competent summary

judgment evidence to support the conclusion that they were intended third-party

beneficiaries of Fannie Mae's servicing guidelines.  They have pointed to no provision in the alleged servicing guidelines evidencing any intent on the party of Fannie Mae to make mortgagors intended third-party beneficiaries of the guidelines.  There can be no real dispute that Plaintiffs are not third-party beneficiaries of the guidelines and lack standing to enforce them.  Based on the foregoing, summary judgment is appropriate on Plaintiffs' wrongful foreclosure claim.

### 3.    Slander of Title and Private Nuisance Claims

The Court finds that Plaintiffs have abandoned these claims by failing to address them in their Response [67], and failing to rebut Defendants' arguments and evidence on these claims in the Motion for Summary Judgment.  Defs.' Memo in Support of Mot. for Summ. J. [63] at pp. 4-7.  Failure to pursue a claim beyond the complaint constitutes abandonment of that claim, as does inadequate briefing.  *Black v. N. Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir. 2006)("[F]ailure to pursue this claim beyond her complaint constituted abandonment."); *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir. 1994)("A party who inadequately briefs an issue is considered to have abandoned the claim.").  Even had Plaintiffs preserved these claims, the Court is of the view that they could not withstand summary judgment on the merits.

### 4.    Misrepresentation

Plaintiffs allege in the Complaint that Defendants engaged in both intentional and negligent misrepresentation.  Pls.' Am. Comp. [13] at pp. 9-10.  They do not address their intentional misrepresentation claim in their Response [67], nor do they attempt to rebut Defendants' arguments and evidence on this issue.  Defs.' Memo in

Support of Mot. for Summ. J. [63] at pp. 11-15. Plaintiffs have abandoned their intentional misrepresentation claim as well, and it will be dismissed. *Black,* 461 F.3d at 588 n.1; *Cinel,* 15 F.3d at 1345. The Court will address the negligent misrepresentation claim.

Plaintiffs contend that Defendants negligently misrepresented the loan modification process in such a way that they were denied the opportunity to reinstate their loan. Pls.' Resp. [67] to Defs.' Mot. for Summ. J. [63] at p. 3. Plaintiffs claim that "Wells Fargo made the Pennells believe that they were safely in the loan modification process" and would receive a loan modification, when in reality Defendants were actively foreclosing on the Property. *Id.* at pp. 1, 3, 16. They insist that they were told not to make payments so as to not "confuse" and slow down the modification process. Pls.' Response [67] at p. 3-4; Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. at p. 57.

Plaintiffs testified in their depositions that Defendants' representatives assured them not to worry about the default letters they received, because they were "in a loan modification" or "working on a loan modification," and "everything was good" and "those letters go out automatically, but they don't really mean anything." Dep. of Louis Pennell, Ex. A to Defs.' Mot. for Summ. J. [63] at pp. 62, 71-72; Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ. J. [63] at p. 33. According to Mrs. Pennell, just one week prior to foreclosure on the Property, Shannon Garcia told her "we're good to go" and "we would be closing up this next week, we would be finishing everything." Dep. of Pamela Pennell, Ex. B to Defs.' Mot. for Summ J. [63] at pp. 38-

41. Plaintiffs maintain that, had they not been told that modification was a foregone conclusion, they would have taken money out of their retirement account sooner to prevent foreclosure. Pls.' Resp. [67] to Defs.' Mot. for Summ. J. at pp. 5, 11.

Plaintiffs allege separately that, after foreclosure, Defendants misrepresented to them that they could rescind the foreclosure by paying $30,242.15. *Id.* at pp. 5, 18. They claim that they withdrew this amount of money from Mr. Pennell's retirement account, but when they attempted to pay, Defendants and Morris & Associates refused to accept the money or rescind the foreclosure. *Id.* at pp. 5, 18.

In Mississippi, a plaintiff must prove five elements to succeed on a claim of negligent misrepresentation:

> (1) a misrepresentation or omission of fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Mladineo v. Schmidt,* 52 So. 3d 1154, 1164-65 (Miss. 2010).

i.   <u>Misrepresentation of an Existing Fact</u>

To establish a negligent misrepresentation claim, a plaintiff must prove that the defendant misrepresented an existing fact, rather than a promise of future conduct. *Spragins v. Sunburst Bank,* 605 So. 2d 777, 780 (Miss. 1992). As a matter of law, a promise to do or to refrain from doing an act in the future is not actionable because it does not concern an existing fact. *Bank of Shaw v. Posey*, 573 So. 2d 1355,

1360 (Miss. 1990); *Moran v. Fairley,* 919 So. 2d 969, 973 (Miss. Ct. App. 2005).

In *Holland v. Peoples Bank & Trust Co.,* 3 So. 3d 94, 96 (Miss. 2008), a banker orally promised to extend a customer's line of credit by $200,000.00, but the bank later denied the extension. The Mississippi Supreme Court held that dismissal of the plaintiff's negligent misrepresentation claim was proper because "a promise to lend money is not a past or present existing fact but a promise of future conduct and as such is not such a representation as will support recovery under a theory of negligent misrepresentation." *Id.* at 99-100.

In *Bank of Shaw v. Posey,* 573 So. 2d 1355, 1360 (Miss. 1990), the plaintiff alleged that a bank (1) orally promised to lend him $125,000.00 in capital to open a sporting goods store, (2) orally promised him a renewal note of all interim loans after one year, and (3) orally promised to lend him $362,000.00 if his small business loan was rejected. When the bank did not fulfill these alleged promises, the customer sued, claiming negligent misrepresentation. *Id.* The Mississippi Supreme Court held that even if the bank made the alleged promises, they were promises of future conduct, and not statements of fact sufficient to constitute the kind of misrepresentation which would support a claim of negligent misrepresentation. *Id.*

In *Skrmetta v. Bayview Yacht Club,* 806 So. 2d 1120, 1124 (Miss. 2002), a plaintiff based a negligent misrepresentation claim on an allegation that a defendant told him that the defendant intended to buy a hotel by stating that the money for the hotel "was in the bank," which induced the plaintiff to sign a partnership agreement. The Court found that the plaintiff could not prevail on a negligent misrepresentation

claim as a matter of law, because the defendant's statement that it was planning to build a hotel in the future was not a present misrepresentation of fact. *Id.* at 1125.

In the context of this case, the weight of persuasive authority likewise holds that promises to modify a mortgage loan or to rescind a foreclosure constitute promises of future conduct, and cannot form the basis of a negligent misrepresentation claim. *De Franceschi v. BAC Home Loans Servicing, L.P.,* 2012 WL 1758597 (5th Cir. 2012)(interpreting Texas law)(representation that property would not be foreclosed upon while loan modification was pending was promise of future action); *Richardson v. Wells Fargo Bank, N.A.,* No. 4:11-CV-359-A, 2012 WL 2511169, *12 (N.D. Tex. 2012)(same)("promises to provide a loan modification, or the possibility of lowering plaintiff's mortgage payment, or the circumstances under which Wells Fargo would not foreclose or would rescind a foreclosure . . . constitute promises of future conduct and cannot form the basis of a negligent misrepresentation claim."); *DeFranceschi v. Wells Fargo Bank, N.A.,* No. 4:10-CV-455-Y, 837 F. Supp. 2d 616, *626 (N.D. Tex. 2011)(same)("alleged promise to modify the note and delay foreclosure in the future is not a statement of existing fact.").

The substance of Plaintiffs' negligent misrepresentation claim is that Wells Fargo Bank promised them a loan modification, and promised them that they could rescind the foreclosure on the Property. The Court can see no meaningful distinction between Plaintiffs' claim and those rejected in *Holland* and *Bank of Shaw,* where the plaintiffs asserted that they were promised loans, and in *Skrmetta,* where the plaintiff alleged that he was told that the money for a deal "was in the bank." The

statements at issue in this case were essentially promises of future action. As a matter of law, promises of future conduct are not statements of fact capable of supporting a claim for negligent misrepresentation. *Bank of Shaw,* 573 So. 2d at 1360. Summary judgment is appropriate on Plaintiffs' negligent misrepresentation claim for this reason.

ii. <u>Reasonable Reliance</u>

In addition, a plaintiff must prove reasonable reliance to support a negligent misrepresentation claim. *Mladineo,* 52 So. 3d at 1164-65. Plaintiffs cannot show that their reliance on any of the alleged promises made by Defendants was reasonable under the circumstances. The Note and Deed of Trust Plaintiffs signed informed them that Defendants could collect at any time after default. The Note provides:

> (B) Default. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
> . . .
> (D) No Waiver by Note Holder. Even if, at a time when I am in default, the note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later date.

Note, Ex. 3 to Ex. A. To Defs.' Mot. for Summ. J. [63].

The Deed of Trust states as follows:

> 12. Borrower Not Released: Forbearance by Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower . . . shall not operate to release the liability of Borrower . . . . Any forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or

> remedy.
>
> . . .
>
> 22.    Acceleration; Remedies. . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale . . . .

Deed of Trust, Ex. 4 to Ex. A. to Defs.' Mot. for Summ. J. [63].

Plaintiffs received numerous letters advising them that once acceleration occurred, Defendants could foreclose on the Property. Letters, Ex. 6 to Ex. A to Defs.' Mot. for Summ. J. [63] at pp. 42-45. The Trial Period Plan, which Plaintiffs executed, informed them that they "*may* qualify for a new workout option" that would modify their mortgage loan, and that modification would occur *if* they "qualif[ied] under the program requirements." Ex. 7 to Ex. A. to Defs.' Mot. Summ. J. [63](emphasis added). The Trial Period Plan further advised Plaintiffs that "[a]ll of the provisions of the Note and Security Instrument, except as herein provided, shall remain in full force and effect," and that "[t]he lender is under no obligation to enter into any further agreement . . . ." *Id.* Morris & Associates mailed Plaintiffs a letter nearly four months prior to sale of the Property, informing them that foreclosure proceedings were commencing. Letter, Ex. C to Morris & Associates' Mot. for Summ. J. [52].

Plaintiffs knew, as evidenced by their deposition testimony, that they were in the application phase and had not entered into a permanent modification agreement. In light of this knowledge and the provisions in the various documents referenced above, any reliance on the alleged oral representations by Defendants'

representatives would have been unreasonable under the circumstances.  Plaintiffs

signed the Note, Deed of Trust, and the Trial Period Plan.  "[A] person is under an

obligation to read a contract before signing it, and will not as a general rule be heard

to complain of an oral misrepresentation the error of which would have been disclosed

by reading the contract."  *Godfrey, Bassett & Kuykendall Architects, Ltd. v.*

*Huntington Lumber & Supply Co., Inc.,* 584 So. 2d 1254, 1257 (Miss. 1991); *see*

*Stephens v. Equitable Life Assur. Society,* 344 F.3d 458, 81 (5th Cir. 2003); *Lott v.*

*First Family Fin. Servs., Inc.,* No. Civ.A. 2:02CV56PG, 2003 WL 21768024, *3 (S.D.

Miss. 2003).  Plaintiffs "do[] not have any possibility of recovery based on oral

misrepresentations that contradict [the] terms of the loan documents."  *Lott,* 2003 WL

21768024 at *3.  In sum, summary judgment is appropriate as to Plaintiffs' negligent

misrepresentation claim.

B.    Defendants John and Jane Does 1-10

Plaintiffs have listed John and Jane Does 1-10 as Defendants in their

Amended Complaint [13], but have not attempted to name or serve them.  Motions for

Joinder of Parties were due June 10, 2011.  Case Management Order [27].  These

claims should be dismissed.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs cannot meet their summary judgment

burden.  Defendants' Motion for Summary Judgment [63] should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for

Summary Judgment [63] of Defendants Wells Fargo Bank and WFHM is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiffs' claims against Wells Fargo Bank and WFHM are dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 12th day of July, 2012.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE